UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **LATOYA MONROE, individually and on behalf of minor child, ZS,** § § § | |
| *Plaintiff*, § | |
| VS. § | CIVIL ACTION NO. 4:24-CV-00139 |
| § | |
| **ALDINE INDEPENDENT SCHOOL DIST.** § *et al*, § § | |
| *Defendants*. § | |

## MEMORANDUM & ORDER

This action arises out of the sexual assault of a minor child that occurred on an Aldine Independent School District ("Aldine ISD") school bus. Before the Court is Defendants' Motion to Dismiss. ECF No. 8. For the reasons that follow, the Court **GRANTS** Defendants' Motion, but will afford Plaintiff an opportunity to replead.

### I. BACKGROUND[1]

At all relevant times, Plaintiff LaToya Monroe's six-year-old minor child, ZS, was enrolled as a student at Aldine ISD. ECF No. 1-1 at ¶ 8. On February 1, 2023, ZS returned home without his backpack, and Monroe contacted the school to ask about his missing items. *Id.* at ¶ 12. After this inquiry, a police officer contacted Monroe and showed her a video of ZS being sexually assaulted by an older student—estimated to be about 12 or 13 years old—while traveling on an Aldine ISD school bus. *Id.* at ¶¶ 10, 14. Monroe then learned that the same student had been assaulting ZS on the school bus for several weeks. *Id.* at ¶ 9. The older student

---

[1] At this stage, the Court accepts the well-pleaded facts alleged in Monroe's complaint as true, and views them in the light most favorable to her. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

1

attended a different school than ZS, but Aldine ISD had decided to bus students of different schools and ages on the same buses, without a bus monitor. *Id.* at ¶ 10.

About a week after the incidents occurred, Monroe noticed the presence of blood after ZS used the restroom. *Id.* at ¶ 15. She immediately took her son to the hospital. *Id.* Monroe's complaint alleges that "[t]he distressing sexual assaults suffered by ZS during his time on the school bus have left an indelible mark on his emotional, physical, and psychological well-being." *Id.* at ¶ 24.

Following ZS's assault, Monroe and other community advocates called for Aldine ISD to introduce bus aides on all school buses. *Id.* at ¶ 16. Monroe also demanded (1) a daily review of camera footage, (2) counseling sessions for ZS and his family, (3) the dismissal of supervisors at the Aldine ISD Transportation Center, and (4) the filing of charges against the bus driver. *Id.* at ¶¶ 17–18. Aldine ISD confirmed that the police had begun an investigation and assured Monroe that appropriate actions would be taken. *Id.* at ¶¶ 18–19.

Monroe then filed suit in state court, bringing the following claims individually and on behalf of ZS: (1) gross negligence; (2) Title IX; (3) 42 U.S.C. § 1983, alleging violations of the Fourteenth Amendment pursuant to the Equal Protection Clause and the "state-created danger" doctrine. *Id.* at ¶¶ 25–61. Monroe seeks compensatory and punitive damages. *Id.* at ¶ 62.

On January 1, 2024, Defendants removed the action to this Court. ECF No. 1. Defendants later filed a Motion to Dismiss pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6), asking the Court to dismiss all of Monroe's claims against them. ECF No. 8.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1)

A claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018) (quoting *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). Under Federal Rule of Civil Procedure 12(b)(1), lack of subject matter jurisdiction may be found based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. U.S.*, 281 F.3d 158, 161 (2001). The party asserting federal jurisdiction bears the burden of demonstrating by a preponderance of the evidence that subject-matter jurisdiction exists. *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009).

### B. Rule 12(b)(6)

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). That said, a complainant must plead

3

"enough facts to state a claim of relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This must be more than "[a]n unadorned, the-defendant-unlawfully-harmed-me accusation" or "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a claim is plausible on its face only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. While the court must accept well-pleaded facts as true, legal conclusions are not entitled to the same assumption of truth. *Id*. The Court must limit its review "to the contents of the pleadings." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

### III. ANALYSIS

#### A. Gross negligence claims

Defendants assert that Monroe's gross negligence claims must be dismissed because (1) the claims against Aldine ISD are barred by governmental immunity; and (2) the claims against Superintendent Goffney are barred by the Texas Tort Claims Act's election-of-remedies provision.

#### 1. Gross negligence claims against Aldine ISD

As a school district, Aldine ISD is immune from liability unless that immunity has been waived by the Texas Tort Claims Act. *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992) (citing TEX. CIV. PRAC. & REM. CODE §§ 101.001(2)(B), 101.025, 101.051). As relevant here, the Act provides:

> A governmental unit in the state is liable for:
>
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

4

> (A) the property damage, personal injury, or death *arises from the operation or use of a motor-driven vehicle* or motor-driven equipment; and
>
> (B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021 (emphasis added). Thus, the issue here is whether ZS's injuries "arise[] from the operation or use of a motor-driven vehicle." *Id.* Plaintiff submits that they do, given that ZS was assaulted while riding on an Aldine ISD school bus.

But, as Defendants point out, it is well-established that the Texas Tort Claims Act does not waive immunity where the vehicle merely provides the *site* of a plaintiff's injuries, without more. *Doe v. Prosper Indep. Sch. Dist.*, No. 4:22-CV-00814, 2024 WL 1329917, at *5 (E.D. Tex. Mar. 27, 2024) ("[Plaintiff's] injuries arose from [the bus driver's] intentional tort of sexual assault, and the school bus simply furnished the condition that made [the bus driver's] intentional tort possible. [Plaintiff's] injuries did not arise from the operation or use of a motor-driven vehicle. Therefore, § 101.021 of the TTCA does not waive immunity in this instance."); *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51–52 (Tex. 1992) (characterizing § 101.021's waiver of immunity as "limited" and explaining that "[w]hen an injury occurs on a school bus but does not arise out of the use or operation of the bus, and the bus is only the setting for the injury, immunity for liability is not waived"); *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003) (§ 101.021's waiver of immunity requires "more than mere involvement of property"). Accordingly, ZS's injuries cannot be said to have arisen from the operation of the school bus. The bus merely provided the location for the assaults. Aldine ISD is therefore entitled to governmental immunity as to Monroe's gross negligence claim.

### 2. Gross negligence claims against Superintendent Goffney

Defendant Goffney argues that the gross negligence claims against her should be dismissed pursuant to the Texas Tort Claim Act's election-of-remedies statute. That statute applies to all unintentional torts, including negligence. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 658 (Tex. 2008); *see* TEX. CIV. PRAC. & REM. CODE § 101.057(2) ("This chapter does not apply to a claim . . . arising out of assault, battery, false imprisonment, or any other intentional tort.").

Section 101.106(e) of the "Election of Remedies" section of the statute provides, "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106(e). The effect of the election-of-remedies statute is that it "force[s] a plaintiff to decide at the outset whether an employee acted independently . . . or acted within the general scope of his or her employment." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008). It also "eas[es] the burden placed on governmental units and their employees in defending duplicative claims, in part by 'favor[ing] the expedient dismissal of . . . employees when suit should have been brought against the government.' under the Act." *Texas Dep't of Aging & Disability Servs. v. Cannon*, 453 S.W.3d 411, 415 (Tex. 2015) (quoting *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 355 (Tex. 2013)).

In this case, provision § 101.106(e) plainly requires dismissal of the gross negligence claims against Superintendent Goffney. Because the Act also declines to waive Aldine ISD's governmental immunity, the Act's procedural devices serve to strip away the Court's ability to reach the merits of Monroe's negligence claims. This result is distressing in light of such

6

devastating harm to a young child. But the Court's hands are tied—Texas courts have repeatedly acknowledged that the Act has this effect where governmental immunity is not waived. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 658 (Tex. 2008) (collecting cases where § 101.106(e) barred claims against governmental employee even though immunity was not waived for suit against governmental unit); *Texas Adjutant Gen.'s Off. v. Ngakoue*, 408 S.W.3d 350, 358 (Tex. 2013) ("[W]hen [a governmental] employee is dismissed under [§ 101.106(e)], the suit then proceeds solely against the government, assuming immunity is otherwise waived."). Texas courts have not yet identified a pathway around § 101.106(e)'s unforgiving procedural bar. The Court must dismiss Monroe's gross negligence claims against Superintendent Goffney.

### B. Title IX claims

Defendants contend that Monroe's personal Title IX claim should be dismissed because she lacks standing to assert an individual Title IX claim. Separately, they argue that the Title IX claim that Monroe brings on behalf of ZS should be dismissed because Monroe has failed to adequately plead that school officials were deliberately indifferent to the sexual assault, as Title IX requires.

#### 1. Monroe's personal Title IX claim

Parents cannot establish standing to pursue personal Title IX based on their children's injuries, but they can establish standing to assert the claims of their children as "next friends." *Rowinsky v. Bryan Indep. Sch. Dist.*, 80 F.3d 1006, 1010 n.4 (5th Cir. 1996) ("It is undisputed that [parent] has standing, as next of friend, to assert the claims of her daughters, but nothing in the statutory language provides her with a personal claim under title IX.") *overruled on other grounds*, *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999); *Doe v. Bridgeport Indep. Sch. Dist.*, No. CIV.A.3:94-CV-1889-D, 1996 WL 734949, at *2 (N.D.

7

Tex. Dec. 11, 1996) (rejecting parent's argument that she had a right to recovery that was "derivative and independent" of her child's right; explaining that parent only had standing to bring Title IX claim on child's behalf as next friend). Monroe cites to *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.* to argue that she has standing to assert a personal claim. 550 U.S. 516 (2007). However, *Winkelman* is about parents' rights to bring personal Individuals with Disabilities Education Act claims, not Title IX claims. *Id.* Accordingly, *Winkelman* has no bearing on this suit. Monroe's personal Title IX claim against Defendants may not proceed.

### 2. Monroe's Title IX claim on behalf of ZS

Next, Defendants argue that Monroe has not stated a viable Title IX claim on behalf of ZS. To state a Title IX claim for student-on-student harassment, a plaintiff must allege that (1) a school official with authority to address the harassment; (2) had actual notice of the harassment (or risk of harassment); and (3) was deliberately indifferent to such knowledge. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

To the extent that Monroe bases her Title IX claim on Aldine ISD's actions prior to February 1, 2023, her claim fails because she has not alleged that Aldine ISD had actual notice of any sexual abuse on buses prior to that date. *See id.* To the extent that Monroe bases her Title IX claim on Aldine ISD's actions following February 1, 2023, her allegations do not demonstrate that Aldine ISD acted with deliberate indifference. She alleges, without elaboration, that Aldine ISD began an investigation after learning of the assaults. ECF No. 1-1 at ¶¶ 9, 18–19. These allegations do not show that Aldine ISD "respond[ed] to known peer harassment" in a "clearly unreasonable" manner. *Davis Next Friend LaShonda D.*, 526 U.S. at 649; *cf. I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019) ("[N]egligent delays, botched investigations

8

of complaints due to the ineptitude of investigators, or responses that most reasonable persons could have improved upon do not equate to deliberate indifference.") (citation omitted).

Therefore, at this stage, Monroe's allegations cannot plausibly support a Title IX claim. That said, the Court is not convinced that amendment would be futile. If Monroe wishes to amend her complaint, she should take care to allege facts that show that Aldine ISD had actual notice of ZS's abuse before February 1, 2023; and/or that Aldine ISD's response following its actual notice on February 1, 2023, amounts to deliberate indifference.

### C.  § 1983 claims

Aldine ISD argues that Monroe's § 1983 claims against it must be dismissed because Monroe cannot establish municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Superintendent Goffney urges dismissal of Monroe's § 1983 claims against her based on qualified immunity. Even if Monroe could clear these hurdles, Defendants submit that Monroe's § 1983 claims fail on the merits.

#### 1.  § 1983 claim against Aldine ISD

Aldine ISD is a local government entity and cannot be liable under § 1983 under a theory of *respondeat superior*. *Monell*, 436 U.S. at 694. Instead, for Monroe's § 1983 claim to proceed against Aldine ISD, Monroe must plausibly allege that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009). Courts look to state law to identify the municipal policymaker. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). In Texas, "final policymaking authority in an independent school district . . . rests with the district's board of trustees." *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993). Therefore, the issue is whether Monroe has alleged that the Aldine ISD's Board of

Trustees has promulgated a policy or custom that was the moving force behind a constitutional violation.

Monroe does not allege that an official on-the-books policy violated ZS's constitutional rights. Instead, her complaint alleges that the constitutional violation was caused by Defendant's custom of allowing students of different age groups to ride together on buses, while failing to supervise and monitor those students. She alleges that Defendants were deliberately indifferent to the fact that this custom would result in sexual assault of younger students. Defendants respond that (1) Monroe does not allege that the final policymaker (i.e., the Board of Trustees) acquiesced to this custom; and (2) in any event, the custom was not enacted with deliberate indifference to constitutional rights.

To amount to a custom, a practice must be so "persistent" and "widespread" that it is "so common and well settled as to constitute a custom that fairly represents [its] policy." *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 759 (5th Cir. 1986) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). Further, the final policymaker—here, the Board of Trustees— must have actual or constructive knowledge of the custom. *Id.* Where a policy or custom is facially constitutional, a plaintiff must also show that the final policymaker adopted or acquiesced to it with deliberate indifference to constitutional concerns. *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 757 (5th Cir. 1993).

First, the Court agrees with Defendants that Monroe's complaint does not allege that the Board of Trustees is responsible for a policy or custom that caused ZS's injuries. Monroe's complaint only references the Board of Trustees once, when she points out that "School Board Policies 5150 of Aldine ISD" "provides for students' behavior on school buses" and "imposes suspension to students from riding the bus if the students' conduct threatens the safety of others

10

or the efficient and orderly operation of a school bus." Dkt. No. 1-1 at ¶ 41. These allegations do not demonstrate that the Aldine ISD Board of Trustees acquiesced to an unconstitutional custom—in fact, they suggest the opposite. *See Doe through Next Friend Roe v. Snap, Inc.*, No. CV H-22-00590, 2022 WL 2528615, at *3 (S.D. Tex. July 7, 2022) (noting that plaintiff's complaint did not mention Board of Trustees, and that allegations were therefore insufficient to allege that Board of Trustees was responsible for unconstitutional policy or custom); *see also Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 413 (5th Cir. 2015) (finding that policies "prohibiting racial discrimination, bullying, and harassment" negated inference that Board of Trustees was deliberately indifferent to student-on-student racial harassment).

Second, the Court agrees with Defendants that Monroe has not shown that the Board of Trustees was deliberately indifferent to constitutional rights. To plead that the Board acted with deliberate indifference, Monroe would need to plead facts showing that the need for bus monitors and/or age-segregated buses was "so obvious," and the lack of these policies "so likely to result in the violation of constitutional rights, that the policymakers of the [school district could] reasonably be said to have been deliberately indifferent to the need." *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 757 (5th Cir. 1993) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)).

In *Snap, Inc.*, a school district had a policy of allowing teachers to communicate with opposite-sex students in closed-door rooms. After a teacher sexually assaulted a student in a closed-door meeting, the student alleged that the school's policy was promulgated with deliberate indifference to the risk of sexual assault, particularly given that there had been five instances of sexual assault of students by employees in the past 20 years. 2022 WL 2528615, at *4. Judge Rosenthal held that it was not "'so obvious' that a teacher who is alone with a student

11

of the opposite gender will sexually assault that student, so as to require the enactment of an open-door policy." *Id.* Here, too, the facts that Monroe has alleged do not demonstrate that it was "so obvious" that middle school students riding unsupervised on a bus with elementary school students will sexually assault younger students, so as to require bus monitors and/or age-segregated buses.

### 2. Qualified immunity

Defendant Goffney argues that the § 1983 claims against her fail because she is entitled to qualified immunity. It is Monroe's burden to establish that the doctrine of qualified immunity does not apply. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). To overcome Goffney's qualified immunity defense, Monroe must "specifically identify [Goffney's] personal involvement in the alleged wrongdoing." *Jimerson v. Lewis*, 94 F.4th 423, 428 (5th Cir. 2024) (quoting *Thomas v. Humfield*, 32 F.3d 566, 1994 WL 442484, at *5 (5th Cir. 1994)).

The only factual allegation specific to Superintendent Goffney in Monroe's complaint is that she "bore a duty and professional obligation to safeguard its students from harm, including instances of sexual assault." ECF No. 1-1 at ¶ 28. This single, imprecise allegation is not enough to establish Goffney's personal involvement.

All in all, the allegations underlying Monroe's § 1983 complaint cannot overcome the standards imposed by *Monell* and the qualified immunity doctrine. However, the Court will afford Monroe the opportunity to amend her complaint to include factual allegations that cure the just-discussed inadequacies.[2]

---

[2] Even if Monroe had successfully overcome these barriers, she has also not plausibly alleged a constitutional violation. Her complaint alleges that Defendants (1) violated the Fourteenth Amendment by creating a dangerous environment for ZS and (2) violated the Fourteenth Amendment's Equal Protection Clause. ECF No. 1-1 at ¶¶ 38–52.
       First, to the extent that the state-danger doctrine is arguably applicable to this case, as described above, Monroe has not established that Defendants were deliberately indifferent to dangers to ZS, which is a necessary element of a state-created danger Fourteenth Amendment claim. *Fisher v. Moore*, 62 F.4th 912, 916 (5th Cir. 2023)

### D. Punitive damages

Lastly, it is well-established that § 1983 plaintiffs may not recover punitive damages against municipalities. *Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981); *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 513 (5th Cir. 2022). Plaintiff's claim for punitive damages against Aldine ISD is dismissed with prejudice.

## IV. CONCLUSION

For the forgoing reasons, the Court **GRANTS** Defendant's Motion. Except where otherwise noted, Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**. Plaintiff may file an amended complaint within two weeks of the filing of this Order. Defendant may file a Motion to Dismiss within two weeks of Plaintiff's filing of her amended complaint.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 31st day of July, 2024.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

(quoting *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 865 (5th Cir. 2012) (en banc)); *see also Covington Cty. Sch. Dist.*, 675 F.3d at 866 ("At most, [plaintiffs] allege that the school was aware of some general deficiencies in the [allegedly unconstitutional] policy. They do not allege that the school knew about an immediate danger to [the plaintiff's] safety, nor can the court infer such knowledge from the pleadings. Without such allegations, even if we were to embrace the state-created danger theory, the claim would necessarily fail.").

Second, to state a claim under the Equal Protection Clause, Monroe "must allege and prove that [(1) ZS] received treatment different from that received by similarly situated individuals and that [(2) the unequal treatment stemmed from a discriminatory intent." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quoting *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004)). Monroe's allegations do not demonstrate that ZS received different treatment than similarly situated individuals—for example, that buses were more effectively monitored or age-segregated for students of a different age, race, or socio-economic status than ZS—or that such treatment was a product of discriminatory intent.

If Monroe elects to amend her Complaint, she should take care to address these deficiencies, as well.