IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LATOYA MONROE, as "Next Friend" | § | |
| On behalf of minor child, ZS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| ALDINE INDEPENDENT SCHOOL | § | Civil Action No. 4:24-cv-00139 |
| DISTRICT. *et al,* | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS ALDINE INDEPENDENT SCHOOL DISTRICT AND LATONYA M. GOFFNEY'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants Aldine Independent School District ("Aldine ISD" or the "District") and

LaTonya M. Goffney ("Superintendent Goffney") partially move to dismiss claims asserted against

them by Plaintiff LaToya Monroe, as next friend and on behalf of minor child, ZS, as follows:

### NATURE AND STAGE OF PROCEEDING

ZS was a six-year-old student at Aldine Independent School District during the 2022-2023

school year.  Dkt. No. 16 at ¶ 8.  On February 1, 2023, ZS's mother, LaToya Monroe, contacted the

District because she thought ZS's backpack was left on the school bus.  *Id.* at ¶ 17.  The District

reviewed video footage to determine what happened to the backpack and discovered footage of ZS

being sexually assaulted by an older minor student.  *Id.*  The older student was in middle school and

attended a different school than ZS.  *Id.* at ¶ 9.  In response to reviewing the troubling footage, the

District immediately notified ZS's mother and its police department, and promptly initiated an

investigation.  *Id.* at ¶ 17.  During the investigation, it was determined that ZS had been sexually

assaulted by the same student on two previous occasions.  *Id.* at ¶ 18.  ZS does not plead that ZS

continued to be sexually assaulted after the District intervened and began its investigation.

ZS also alleges that prior to February 1, 2023, ZS's first grade teacher reached out to Monroe about a report of inappropriate touching on the bus around November of 2022. *Id.* at ¶ 15.   An unknown and unidentified school administrator allegedly spoke to Monroe about the alleged incidents. *Id.*

This Court granted Defendants' Motion to Dismiss on July 31, 2024.  Dkt. No. 15, but gave ZS an opportunity to replead.  ZS filed his First Amended Complaint on August 14, 2024, and for the first time alleges that "Administrator Doe" knew about previous incidents on ZS's bus.  Dkt. No. 16 at ¶ 26[1].  Defendants now move to dismiss ZS's post-assault Title IX claim and Section 1983 claims.

## ISSUES PRESENTED

1.   The District can only be liable for a Section 1983 violation if its board of trustees adopted an official policy or custom that was the moving force behind ZS's constitutional injuries. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 691(1978).  Should the Court dismiss ZS's Section 1983 claims for failure to plead municipal liability?

2.   "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).  ZS asserts identical claims against both Aldine ISD and Superintendent Goffney in her official capacity.  Should the Court dismiss ZS's official capacity claims against Superintendent Goffney because they are duplicative of his claims against Aldine ISD?

3.   Public servants are immune from suit unless their conduct violated "clearly established" federal law.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To overcome qualified immunity, a plaintiff must respond with factual specificity and "fairly engage" the immunity defense. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).  Conclusory allegations are not sufficient—rather, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   ZS's Amended Complaint fails to allege any facts suggesting that Superintendent Goffney was personally involved in violating any of his clearly established rights.   Should the Court dismiss ZS's constitutional claims against Superintendent Goffney based on qualified immunity?

4.   The District can only be liable for a post-assault Title IX claim if plaintiff pleads the District responded to the assault with deliberate indifference. *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011).  Should the Court dismiss ZS's post-assault Title IX claim since the District reasonably responded to the February 2023 incident?

---

[1] ZS adds Administrator Doe as a defendant in his Amended Complaint.  However, Administrator Doe is unknown and has not been served.  Therefore, the undersigned counsel are not representing Administrator Doe at this time.

### STANDARD OF REVIEW

Dismissal of a lawsuit on the pleadings is proper where there is either (i) a lack of a cognizable theory of recovery, or (ii) the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Phrased differently, a claim may be dismissed if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). While a court will accept a plaintiff's factual allegations as true, the factual allegations must exist; "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court clarified Rule 8's specificity standards for pleadings, holding that all pleadings must "provide the 'grounds' of [the party's] 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). This standard "governs . . . in all civil actions and proceedings in the United States district courts." *Iqbal*, 556 U.S. at 684.

When deciding whether a pleading satisfies the *Twombly/Iqbal* standard, a court must first determine if the asserted claims go beyond mere labels and conclusions and a formulaic recitation of elements, if any. "[N]aked assertion[s] devoid of further factual enhancement" will no longer suffice. *Iqbal*, 556 U.S. at 678 (internal citations and quotations omitted). To properly plead a claim, then, the plaintiff must give a defendant not only fair notice of the claim being asserted, but "the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal citations and quotations omitted) (per curiam). "[T]he tenet that a court must accept as true all of the allegations contained in [a

pleading] is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Mere assertions of legal conclusions "are not entitled to assumption of truth"—they "must be supported by factual allegations." *Id.* at 678–79. Additionally, if a plaintiff's allegations are contradicted by facts disclosed by a document attached to the complaint (or attached to the motion to dismiss that is central to the plaintiff's claims and referenced by the complaint), then those contradicted allegations cannot be accepted as true under Rule 12(b)(6). *Carter v. Target Corp.*, 541 Fed. App'x 413, 417 (5th Cir. 2013).

<u>ARGUMENT AND AUTHORITIES</u>

I.    **The Court should dismiss ZS's Section 1983 claims because he failed to plead sufficient facts to establish municipal liability under *Monell*.**

A.    **_Monell_ liability framework**

To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994). The standard for suing a local government under Section 1983 is rigorous. In particular, *respondeat superior* liability is absolutely prohibited. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 691(1978). In other words, a local government cannot be held liable merely because its employees allegedly violate the Constitution. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Instead, a plaintiff must show:

(i)    the constitutional violation was caused as the direct result of the execution of an official "custom" or "policy";

(ii)   the custom or policy was approved or sanctioned by the entity's "final policymaker"; and

(iii)  the final policymaker acted with "deliberate indifference" and the custom or policy was the "moving force" behind the violation.

*Id.* at 578. The identification of the "final policymaker" is a question of state law. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). Under well-established Texas law, the final policymaker for a

Texas independent school district is its board of trustees. *See Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993); TEX. EDUC. CODE §§ 23.01, 23.26.

Further, the Fifth Circuit has made clear that "the deliberate indifference standard is a high one," amounting to conscious disregard of a substantial risk of harm. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). "Actions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Id.* Moreover, an official policy or custom is "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated" by the final policymaker or "a persistent, widespread practice" of the entity that is "so common and well settled as to constitute a custom that fairly represents [its] policy." *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 759 (5th Cir. 1986) (internal citations omitted). The final policymaker must have "actual or constructive knowledge" of this custom. *Id.* at 759. And when a plaintiff alleges that a policy or custom of the entity caused him injury, "rigorous standards of culpability and causation must be applied to ensure that the [entity] is not held liable solely for the actions of its employees." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 405 (1997). Indeed, "[a] plaintiff's allegations regarding the policy or custom cannot be conclusory, and they must contain specific facts . . . ." *Arevalo v. City of Farmers Branch, Tex.*, No. 3:16–CV–1540–D, 2017 WL 5569841, at *4 (N.D. Tex. Nov. 20, 2017) (internal citations omitted); *see also Bradyn S. v. Waxahachie Indep. Sch. Dist.*, 407 F. Supp. 3d 612, 622 (N.D. Tex. 2019).

ZS must therefore show that the District's Board adopted an unconstitutional policy or knew about a persistent and widespread practice that was "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009). ZS must also show that the Board's deliberate indifference in adopting such a policy or custom was the moving force behind ZS's injuries. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). ZS cannot make these showings.

**B.** **ZS has not identified an official policy that was adopted with deliberate indifference or was the moving force behind ZS's constitutional injury.**

ZS does not plead any facts suggesting a Board policy was adopted with deliberate indifference. The only "policies" ZS points to are allegedly policies from the District's Student/Parent Handbook. Dkt No. 16 at ¶¶ 11-14. Yet, the language in the Student/Parent Handbook is not "policy" capable of supporting a claim under Section 1983 and *Monell*. There are no facts alleged to support a claim that the Board approved the Handbook (or knew anything about its specific contents). The Fifth Circuit rejected similar allegations when a student athlete argued that the Athletic Code of Conduct constituted "board policy" for purposes of a *Monell* claim against the District. *See McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1012 (5th Cir.), *cert. denied,* 144 S. Ct. 348 (2023), *reh'g denied,* 144 S. Ct. 629 (2024) ("McClelland did not allege facts demonstrating that the KISD Board had ratified the ACC, and the ACC itself does not indicate that it was ratified by the Board."); *see also Longoria v. San Benito ISD*, 942 F.3d 258, 271 (5th 2019) (*Monell* claim failed because plaintiffs "could not point to any facts in the complaint that alleged that the Board was responsible for promulgating and adopting the [Cheerleader] Constitution."). But even if the Handbook did constitute Board policy (it does not), the quoted language from the Handbook discourages and disciplines dangerous behavior on a school bus, which negates any inference that the Board acted with deliberate indifference. *See Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 413 (5th Cir. 2015) (noting the existence of Board policy prohibiting racial discrimination, bullying, and harassment when finding the district was not deliberately indifferent) (comparing *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 250 (5th Cir. 2003)).

**C.** **ZS's factual allegations are insufficient to show that the District had customary policies that were adopted with deliberate indifference or the moving force behind ZS's injuries.**

ZS also does not plead facts suggesting the Board permitted "persistent and widespread practices . . . i.e., conduct that has become a traditional way of carrying out policy." *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984). ZS alleges that the District had customary policies to allow unsupervised mixed-age bus rides and to not review bus camera footage. Dkt. No. 16 at ¶¶ 19, 20.

However, ZS failed to show that these purported customs were unconstitutional or adopted "with deliberate indifference to the known or obvious fact that such constitutional violations would result." *Piotrowski*, 237 F.3d at 579.  ZS also cannot show that there was "a direct causal link" between the purported custom and the violation.  *Id.* at 580.

      First, ZS cannot show deliberate indifference with respect to its alleged custom to allow unsupervised mixed-age bus rides because there are no factual allegations that suggest the District had this custom *because* it intended for or knew with substantial certainty that mixing age groups without a bus monitor would lead to ZS's injuries. ZS's new allegations that the bus driver observed occasions where ZS "would not stay in his seat" in October 2022 and that an unidentified student reported inappropriate touching on the school bus in November 2022 are not enough to suggest the Board knew that ZS was at risk of being sexually assaulted by an older student.  Dkt. No. 16 at ¶¶ 12, 15. Simply because a student "does not stay in his seat" does not plausibly suggest that he is being sexually assaulted by an older student.  And the vague allegation about the single November 2022 incident does not indicate whether the alleged inappropriate touching was between mixed-age students. Furthermore, ZS certainly does not allege that the Board knew about these allegations. *See Doe through Next Friend Roe v. Snap, Inc.,* No. CV H-22-00590, 2022 WL 2528615, at *3 (S.D. Tex. July 7, 2022) (concluding that despite the allegations that there had been five instances of sexual assault of students by employees in the past 20 years, the school did not act with deliberate indifference by having a purported policy that allowed teachers to have closed-door meetings with students of the opposite sex because there were no allegations that the board knew or should have known that the closed-door policy posed an excessive risk to students' safety).  As this Court aptly pointed out in its Memorandum and Opinion granting the District's Motion to Dismiss, ZS's facts "do not demonstrate that it was 'so obvious' that middle school students riding unsupervised on a bus with elementary school students will sexually assault younger students, so as to require bus monitors and/or age-segregate buses." Dkt. No. 15 at pp. 11-12.

Likewise, ZS cannot argue that the District had a custom to not review video footage *because* it intended for or knew with substantial certainty that ZS would be sexually assaulted by an older student. In fact, ZS's admission that the District did not review the bus cameras further supports the inescapable conclusion that the board of trustees, the policymaker, was not aware of ZS's sexual abuse. Moreover, the District's alleged policy of not reviewing bus footage could not have been the moving force behind ZS's injuries, as ZS did not plead facts that show that the middle school student knew the District did not review camera footage, and that is why he sexually assaulted ZS. Absent these allegations, ZS cannot show a "direct causal link" between the alleged policy and the violation. *Piotrowski*, 237 F.3d at 580.

ZS also cannot show that the Board acquiesced to these purported customs, because ZS cannot establish a pattern of conduct or practice that was sufficiently widespread or occurred over a long period of time or on a frequent basis so as to constitute an official Board practice or custom. *Piotrowski*, 237 F.3d at 579; *see also Sanders-Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010); *Peterson*, 588 F.3d at 850. A pattern requires "sufficiently numerous prior incidents," as opposed to "isolated instances." *Id.* at 851. This is a high bar. *See id.* (holding 27 incidents of excessive force over a period of four years did not "reflect a pattern that can be said to represent official policy of condoning excessive force so as to hold the City liable for the acts of its employees' unconstitutional conduct."); *see also Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (holding 11 incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry). Moreover, to support an allegation of a pattern, the alleged constitutional violation needs to be nearly identical. *See Connick v. Thompson*, 563 U.S. 51, 63 (2011) (explaining it is not enough to point to a general pattern of Brady violations, the plaintiff had to point to a pattern of Brady violations involving blood evidence).

Here, ZS only alleges one prior incident of inappropriate touching that may or may not have involved ZS and may or may not have involved mixed-aged students. Dkt. No. 16 at ¶ 15. However,

a single unsubstantiated incident does not show a widespread pattern of inappropriate sexual conduct on a school bus.  *See Ayon v. Austin Indep. Sch. Dist.*, 1:21-cv-00209-RP (W.D. Tex. 2024), attached as Exhibit 1[2] (finding that out of the several instances of AISD employees allegedly sexually assaulting students, only one of the incidents involved similar facts to plaintiff's case, but even so, a "single prior substantiated incident does not show a widespread pattern. . .").  In addition, ZS cannot alone be his own pattern, which further shows that ZS cannot establish a District custom or practice that directly resulted in a violation of ZS's rights.  *See Ratliff v. Aransas Cnty.*, 948 F.3d 281, 285 (5th Cir. 2020) ("[T]o plead a practice 'so persistent and widespread as to practically have the force of law,' [plaintiff] must do more than describe the incident that gave rise to his injury.").  Consequently, ZS's Section 1983 based on the Board's alleged adoption of a custom that led to ZS's injuries should be dismissed.

### D.  ZS has not pled a viable municipal liability theory based on a failure to adopt policies because the District did not act with deliberate indifference.

Finally, ZS's claim the District was deliberately indifferent in its failure to adopt policies to monitor video camera footage from its school buses and require age segregation and monitors on its buses lacks merit.  Dkt. No. 16 at ¶¶ 19, 21. The Fifth Circuit describes the onerous burden that a plaintiff must satisfy to plead a viable municipal liability under Section 1983 based on a failure to adopt policies as follows:

> A school district's failure to adopt an official policy on a given subject may serve as a basis for § 1983 liability only when the omission "amounts to an intentional choice, not merely an unintentionally negligent oversight," and the Supreme Court has held that such an omission is equivalent to an intentional choice only where the entity has acted with deliberate indifference. "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences will be a deprivation of constitutional rights."

*Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 217 (5th Cir. 1998).  ZS fails to plead any facts "suggesting that, at the time of the sexual abuse, the lack of an official policy on this issue was the result of an *intentional* choice on the part of the board of trustees." *Id.* (emphasis added).  To the

---

[2]  In Accordance with this Court's local rule 6.C., *Ayon v. Austin Indep. Sch. Dist.*, 1:21-cv-00209-RP (W.D. Tex. 2024) is attached as Exhibit 1.

contrary, the District took steps to stop abuse from occurring on its school buses by installing cameras, which negates any deliberate indifference allegations. *See Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 202 (5th Cir. 1994) ("even if the deployment of [] security measures was haphazard or negligent, it may not be inferred that the conduct of the defendants rose to the level of deliberate indifference."); *see also Ayon*, 1:21-cv-00209-RP (W.D. Tex. 2024) (concluding that the district's choice to retroactively review video footage rather than live monitor video feeds amounted to negligence, at best, not deliberate indifference).  Therefore, any Section 1983 claim based on a failure to adopt a policy to review video footage from school buses fails.

## II.    ZS's official capacity claims against Superintendent Goffney are duplicative of his claims against Aldine ISD.

ZS asserts the same claims against, and seeks the same relief from, Aldine ISD *and* Superintendent Goffney, individually and in her official capacity.  *See* Dkt. No. 16, ¶ 37.  The United States Supreme Court has long held that "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).  Accordingly, a lawsuit against an individual acting in their official capacity is, "in all respects other than name, to be treated as a suit against the entity."  *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 484 (5th Cir. 2000) (quoting *Graham*, 473 U.S. at 166) (quotations omitted); *see also Guillot* ex rel. *T.A.G. v. Russell*, 59 F.4th 743, 751 (5th Cir. 2023) ("A claim against government officials in their official capacity is a *de facto* suit against the local government entity of which the officials act as agents.").

When identical claims are asserted against a governmental entity *and* an individual acting in their official capacity as an employee or representative of that governmental entity, courts may dismiss the duplicative official capacity claims and allow the case to proceed against the entity only.  *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (affirming dismissal of official capacity claims because "these allegations duplicate claims against the respective governmental entities themselves"); *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 1002–03 (S.D. Tex. 2014) ("Because any § 1983

claims asserted against the individual defendants in their official capacities would duplicate the § 1983 claims asserted against HISD, the individual defendants are entitled to dismissal of any § 1983 claims that plaintiffs have asserted or attempted to assert against them in their official capacities."); *Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826, 833 (S.D. Tex. 2011) ("The Court finds that the official-capacity claims against the officers must be dismissed.  The Supreme Court noted in *Graham* that there is no longer a need to bring official-capacity actions against local government officials, for under *Monell* . . . local government units can be sued directly.") (citations and quotations omitted).

Because ZS's official capacity claims against Superintendent Goffney are duplicative of his claims against Aldine ISD, the claims against Superintendent Goffney should be dismissed.

## III.  Superintendent Goffney is entitled to qualified immunity from ZS's Section 1983 claims.

To state a claimed constitutional violation against a government official under 42 U.S.C. § 1983, a plaintiff must establish that (i) the defendant acted under color of state law; and (ii) while acting under color of state law, the defendant deprived the plaintiff of a federal constitutional right. *See West v. Atkins*, 487 U.S. 42, 48 (1988).  However, the Supreme Court has long held that public servants are immune from suit unless their conduct violated "clearly established" federal law.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Accordingly, individual defendants sued for constitutional violations § 1983 may invoke the defense of qualified immunity to avoid the disruption and costs associated with litigation.[3]  *Mitchell v. Forsyth*, 472 U.S. 511 (1985).

Although qualified immunity is an affirmative defense, once raised, the plaintiff has the burden of demonstrating the inapplicability of the defense.  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).  To satisfy this burden, the plaintiff must respond with factual specificity and "fairly engage" the immunity defense.  *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).  The standard

---

[3]Plaintiffs may not engage in discovery until they have supported their constitutional claims with sufficient facts that, if true, would overcome the immunity defense.  *Iqbal*, 556 U.S. at 685–86; *Winstead v. Box*, 2011 WL 1057558, *1–2 (5th Cir. March 21, 2011) (*citing Wicks v. Miss. State Employment Servs.*, 41 F.3d 991, 994 (5th Cir. 1995)).

requires more than conclusory assertions. *See Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). Instead, the plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The availability of immunity is a question of law. *Siegert v. Gilley*, 500 U.S. 226, 231–32 (1991). Courts must determine (i) whether the plaintiff has described a violation of a constitutional right; and (ii) whether the right was "clearly established" at the time of the official's conduct. *Pearson v. Callahan*, 555 U.S. 223, 223–24 (2009). Courts may decide which of the two prongs should be decided first. *Id.* at 225. The plaintiff bears the burden of showing that the official violated clearly established law. *Kovacic v. Villareal*, 628 F.3d 209, 212 (5th Cir. 2010). The plaintiff must identify the violation of a "particularized" right. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). And, the plaintiff must show that the "contours" of the right were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Alexander v. Eeds*, 392 F.3d 138, 146 (5th Cir. 2004). This means that "existing precedent" must have placed the constitutional question "beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011).

Ultimately, for an official to lose qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (citations omitted); *Stefanoff v. Hays Cnty.*, 154 F.3d 523, 525 (5th Cir. 1998). Accordingly, the qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 343 (1986). "This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citations omitted).

Here, ZS cannot overcome Superintendent Goffney's entitlement to qualified immunity because he does not identify any specific acts that she allegedly carried out—or failed to carry out—

in violation of ZS's rights.  In a purely conclusory fashion, ZS alleges that Superintendent Goffney "was personally involved in perpetuating the unconstitutional customs that led to ZS's assault" because she allegedly failed "to ensure compliance with procedures outlined in the district Student/Parent handbook that requires the review of bus cameras by school principals to ensure student conduct and safety" and she allegedly failed "to implement new safety measures after notice of prior incidents or ensuring that the district drivers and the transportation director were adhering to the policy on students standing while the bus was operated."  Dkt. No. 16 at ¶¶ 22, 38.  Yet, ZS does not point to any facts that suggest Superintendent Goffney knew about the misconduct on ZS's bus and personally decided not to do anything about it.  ZS just assumes, without any factual basis, that Superintendent Goffney was involved in an action or inaction that led to ZS's injuries.  Assumptions and speculative allegations are not enough to overcome Superintendent Goffney's entitlement to qualified immunity.  *Iqbal,* 556 U.S. at 676 ("[B]ecause vicarious liability is inapplicable to. . .§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Therefore, ZS cannot state a valid claim against Superintendent Goffney, individually, because he has not alleged any facts demonstrating that Superintendent Goffney was *personally* involved in violating ZS's clearly-established constitutional rights or was otherwise *personally* engaged in conduct that was causally connected to an alleged constitutional violation.  *See Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005); *Gallentine v. Housing Authority of City of Port Arthur, Tex.*, 919 F.Supp.2d 787, 811 (E.D. Tex. 2013).  Consequently, ZS's constitutional claims against Superintendent Goffney are barred by qualified immunity, and should be dismissed.

## IV.   The Court should dismiss ZS's post-assault Title IX claims because he does not show the District responded with deliberate indifference.

In order to prevail on his post-assault Title IX claim, ZS must allege facts suggesting the District responded to the February 2023 sexual incident with deliberate indifference.  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291–92 (1998).  "Deliberate indifference is an extremely high

standard to meet." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).   Neither negligence nor mere unreasonableness is sufficient to establish a Title IX violation.   *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011).   In other words, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."   *Doe* ex rel. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998); *see also Rost* ex rel. *K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1113, 1122 (10th Cir. 2008) ("Perhaps the school district should have independently interviewed the boys involved instead of relying on Officer Patrick's investigation and periodic reports, but such an allegation would sound in negligence, not deliberate indifference.").   Moreover, Title IX simply does not require school districts to "remedy" harassment or to "ensure that students conform their conduct to certain rules;" rather, they just must respond in a manner that is not "clearly unreasonable."   *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).

Here, the District's response to the February 2023 incident was reasonable.   As an initial matter, it was the District who alerted ZS's mother of the incident and initiated an investigation. Dkt. No. 16 at ¶ 17. ZS complains that the District's investigation was unreasonably delayed and allegedly did not include key witness interviews, but he does not plead how long the investigation was supposedly delayed (or what he believes would have been a "reasonable delay"), or what "key witnesses" he thinks should have been interviewed.   More importantly, such alleged defects would not constitute deliberate indifference, because "Title IX does not require flawless investigations or perfect solutions."   *Sanches*, 647 F.3d at 170.   "Even when a school's efforts are ineffective, the responses need to have been clearly unreasonable in light of the allegations [in order for Title IX liability to attach]." *K.S. v. Nw. Indep. Sch. Dist.*, 689 Fed. App'x 780, 786–87 (5th Cir. 2017) (quoting *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 384, 388–89 (5th Cir. 2000)).   The Fifth Circuit has been crystal clear on this point:

> [N]egligent delays, botched investigations of complaints due to the ineptitude of
> investigators, or responses that most reasonable persons could have improved upon

do not equate to deliberate indifference.

*I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019); *see also, e.g., Doe*, 220 F.3d at 388–89 (school district not deliberately indifferent despite erroneously conclusion that the complainant had not been sexually assaulted); *Sanches*, 647 F.3d at 170.

Accordingly, *even if* the District's investigation could have been better, "such would only reflect the difficulties of fact-finding—not indifference." *K.S.*, 698 Fed. App'x at 786; *see also I.F.*, 915 F.3d at 369; *Doe*, 220 F.3d at 388–89; *Saphir by and through Saphir v. Broward Cnty. Pub. Sch.*, 744 Fed. App'x 634 (11th Cir. 2018) (assistant principal's response to harassment complaint against special education aide was not deliberately indifferent, even though he failed to interview eyewitnesses and failed to report the incident for formal investigation; he conducted an informal investigation within two days of receiving the allegations, and took corrective action by directing the aide to stay away from the student).

Next, ZS's complaint that the District did not offer counseling or support services for several weeks also does not constitute deliberate indifference.  ZS does not allege that the District never provided ZS supportive services, just that it was delayed.  At best, this deficiency amounts to negligence, not deliberate indifference. *Bichel v. Kennedale Indep. Sch. Dist.*, 2024 WL 1776405, at *8 (N.D. Tex. Apr. 24, 2024); *see also Z.B. v. Irving Indep. Sch. Dist.*, 2019 WL 2716504, at *6 (N.D. Tex. June 28, 2019), *aff'd sub nom. Bhombal v. Irving Indep. Sch. Dist.*, 809 Fed. App'x. 233 (5th Cir. 2020) (Finding no deliberate indifference for District's alleged "failure to provide Z.B. with accommodations such as counseling, social skills training."). In addition, a District's alleged failure to comply with its regulations and procedures "does not establish the requisite deliberate indifference." *Sanches*, 647 F.3d at 169.

Finally, the District did not respond to the February 2023 incident with deliberate indifference because allegedly no changes were made to bus monitoring policies. Dkt. No. 16 at ¶19(c).  It was not "so obvious" that changes needed to be made considering ZS does not allege that the sexual

assault occurred to him, or anyone else, after the District got involved in February 2023.  Moreover, a school district's duty under Title IX is to respond, not to remedy harassment or institute any specific remedial measures requested by a student or their parents. *Doe* ex rel. *Doe*, 153 F.3d at 219.

Most importantly, ZS failed to plead facts that would show that he was subjected to "pervasive" harassment under Title IX.  Several circuit courts require a plaintiff to show that the school's alleged indifference to known peer harassment actually caused them to undergo further harassment. *See, e.g., Kollaritsch v. Mich. State Univ. Bd. of Trustees*, 944 F.3d 613, 623–24 (6th Cir. 2019), *cert. denied*, 141 S. Ct. 554 (2020); *Shank v. Carleton Coll.*, 993 F.3d 567 (8th Cir. 2021); *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057–58 (8th Cir. 2017).  While other circuit courts more broadly impose Title IX liability based on single incidents of pre-notice peer harassment, they have required plaintiffs to allege that the school's actions made them "more vulnerable" to future, speculative harassment. *See, e.g., Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 171 (1st Cir. 2007), *rev'd and remanded on other grounds*, 555 U.S. 246 (2009); *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 273–74 (4th Cir. 2021), *cert. denied*, 143 S. Ct. 442 (2022).[4]  Here, there are no facts alleged that any subsequent harassment took place after the District discovered and reported the initial incidents to ZS's mother, nor are there any allegations that any specific actions by the District made them "more vulnerable" to future, speculative harassment.

In sum, ZS does not plead sufficient facts showing the District responded to the February 2023 incident with deliberate indifference, but rather pleads facts that demonstrate the District reasonably responded.  As such, he failed to allege a post-assault Title IX claim, and he claim should therefore be dismissed.

---

[4] The Fifth Circuit discussed in a recent Title IX student-on-student sexual assault case that it has not really taken a position on this split in circuits.  *See Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 342-43 (2022)

**V.      The Court already dismissed ZS's claim for punitive damages.**

This Court dismissed ZS's claim for punitive damages *with prejudice.*  Dkt. No. 15 at p. 13.  Yet, ZS still brings a claim for punitive damages in his amended complaint. Dkt. No. 16 at p. 10.  As a matter of law, punitive damages are not available against municipalities and other local governments under 42 U.S.C. § 1983.  *City of Newport v. Fact Concerts Inc.*, 453 U.S. 247 (1981); *Mosley v. Houston Comm. College Sys.*, 951 F. Supp. 1279, 1290 (S.D. Tex. 1996).  Punitive damages are likewise unavailable under Title IX.  *Ayala v. Omogbehin*, 2016 WL 7374224, *4–5 (S.D. Tex. Dec. 20, 2016) (dismissing plaintiff's claims for punitive damages under Title IX and 42 U.S.C. § 1983) (citing *Gebser*, 524 U.S. at 286).  Therefore, ZS's claim for punitive damages must be dismissed as a matter of law.

### Conclusion

For these reasons, Defendants Aldine Independent School District and LaTonya M. Goffney respectfully request that ZS's post-assault Title IX claim and Section 1983 claims set forth above be dismissed under 12(b)(6), and that the Court grant Defendants all such other and further relief, both at law and in equity, to which they may be entitled.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By:    /s/ Christopher B. Gilbert
       Christopher B. Gilbert
       State Bar No. 00787535
       cgilbert@thompsonhorton.com
       Alexa Gould
       Texas Bar No. 24109940
       agould@thompsonhorton.com

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6714
Facsimile: (713) 583-8884

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

On September 11, 2024, I electronically filed the foregoing document with the Clerk of the Court of the United States District Court for the Southern District of Texas, using the electronic case filing system of the Court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically using the CM/ECF filing system or by any other manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Alexa Gould
Alexa Gould